UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GINO GENTILE,                          :
                                       :    Civil Action No. 11-6125 (SRC)
                  Petitioner,          :
                                       :
            v.                         :    **OPINION**
                                       :
CHARLES WARREN, et al.,                :
                                       :
                  Respondents.         :


**APPEARANCES:**

**GINO GENTILE,** Petitioner pro se
406621 / 273076-C
New Jersey State Prison
P.O. Box 861
Trenton, N.J. 08625

**CHRISTOPHER W. HSIEH,** Counsel for Respondents
Office of the Passaic County Prosecutors
401 Grant Street
Paterson, N.J. 07505

**CHESLER,** District Judge

     Petitioner Gino Gentile ("Petitioner"), a prisoner currently

confined at New Jersey State Prison in Trenton, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The respondents are Administrator Charles Warren

and the Attorney General of New Jersey.  For the reasons stated

below, the Petition will be denied.

**I. BACKGROUND**

     This Court, affording the state court's factual

determinations the appropriate deference, see 28 U.S.C. §

2254(e)(1)[1], will simply reproduce the recitation of facts as set forth by Superior Court of New Jersey, Appellate Division:

> On March 30, 1997, at approximately 5:00 p.m., Mehmet Kulaskiz, Asad Abuhamda, Adnan Ali, Nadal Haq and Isaam Atsham were in the area of Main and Robert Streets in South Paterson when they saw defendant and another, Louis Muniz. Atsham and Haq decided to approach defendant and Muniz in order to discuss with them an incident between the men the night before.
>
> After some verbal exchanges, defendant brandished a handgun and fired it at Ali, hitting him in the right leg. Defendant then approached Haq, who was crouched behind a car in a fetal position, apparently hiding from the gunfire, pointed his gun at Haq and from point blank range fired two shots "execution style" into the back of Haq's head. Haq was taken to St. Joseph's Hospital where he died of his injuries the next day.
>
> After shooting Haq, defendant then opened fire on Kulaskiz and Abuhamda, who were running from the scene. Abuhamda testified that he looked back to see defendant shooting randomly in the middle of the street. Defendant then turned back toward Ali and shot him again, this time hitting Ali's left leg.
>
> Defendant then fled the scene and hid in the back yard of Russell Whaley, Jr.'s house. Upon finding defendant hiding in his yard, Whaley asked why he was there. Defendant told him that some "Arabs in the area didn't want any black people, Hispanics in the area and they were trying to kill him." Whaley, Jr. then asked defendant to leave, but defendant asked to stay. Russell Whaley, Sr. then came out of the house and told defendant he would take him to a hospital.
>
> While en route to the hospital, defendant instructed the elder Whaley to take him to Wayne. Whaley, Sr. refused and told defendant to get out of his car. Defendant exited the car across from the Madison Diner on Madison

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

Street, Paterson.

Meanwhile, Atsham and two other friends, Ahmad Aftekhar and Thaier Abdehady, were on the lookout for defendant when they spotted him entering the Madison Diner. The three men entered the diner, searching for defendant and Atsham entered the restroom to look for defendant. Gunshots were heard from inside the restroom and defendant was seen exiting the restroom and leaving the diner.

When Aftekhar and Abdehady entered the restroom, they found Atsham lying face-down on the floor. He had been shot twice in the torso and died from his wounds.

Defendant eluded police for almost a week before he was caught and detained by New Britain, Connecticut police on April 4, 1997. Paterson Police Detectives Iurato, Maute, and Jadlos traveled to New Britain to question defendant. During an interrogation, defendant admitted to shooting Adnan Ali and to shooting another person in the Madison Diner.

Finally, there was evidence that approximately two weeks before the March 30, 1997 shooting, defendant was in Connecticut with Jorge Concepcion when defendant showed Concepcion a gun and then fired the gun. Although defendant fired the gun out of the view of Concepcion, Concepcion heard the gun discharge and defendant admitted the next day that he in fact discharged the gun. Ballistics tests revealed that spent casings and bullets from the incident matched the casings and bullets retrieved from the March 30 shooting in Paterson.

State v. Gentile, No. A-0846-00T4 (N.J. Super. Ct. App. Div. Oct. 10, 2002).

In a jury trial, Petitioner was convicted of murder, aggravated manslaughter, attempted murder, aggravated assault and related weapons offenses.  (Id.)  He was sentenced to life imprisonment with thirty years of parole ineligibility and other concurrent terms.  (Id.)  He was also sentenced to

ten years imprisonment with five years of parole ineligibility to run consecutively to the life sentence. (Id.) In an unreported opinion, the Appellate Division affirmed Petitioner's conviction and sentence. (Id.) The New Jersey Supreme Court subsequently denied a petition for certification. State v. Gentile, 815 A.2d 477 (N.J. 2003).

Petitioner filed a petition for post-conviction relief ("PCR"), which was denied. On appeal, the Appellate Division affirmed the decision of the PCR court in part, reversed in part, and remanded for an evidentiary hearing limited to trial counsel's reasons for waiving a limiting instruction when N.J.R.E. 404(b) evidence was admitted. State v. Gentile, 2007 WL 4270757 (N.J. Super. Ct. App. Div. December 07, 2007). On remand, after conducting the evidentiary hearing, the PCR judge once again denied the petition and the Appellate Division affirmed that decision on appeal. State v. Gentile, 2011 WL 677281 (N.J. Super. Ct. App. Div. February 25, 2011). The New Jersey Supreme Court denied the petition for certification. State v. Gentile, 23 A.3d 413 (N.J. 2011).

Thereafter, Petitioner filed the instant habeas petition. (Docket Entry No. 1.) He alleges five grounds for relief:

    1. The trial court denied the Petitioner a fair and impartial jury when it failed to grant the Petitioner's motion for a mistrial.

    2. The Petitioner was denied a fair trial and due process of law when the trial court denied his request to

4

instruct the jury on passion/provication [sic] and/or
imperfect self-defense.

3.  The trial court imposed cruel and unusual punishment
when it imposed a life term for murder and consecutive
sentences for aggravated manslaughter contrary to New
Jersey's sentencing criteria when a quantitative weighing
of the aggravating and mitigating factors did not support
which a sentence [sic].

4.  The defendant was denied the right to a fair trial
and due process when the trial court allowed the state to
introduce inadmissible other cirmes [sic] evidence.

5.  Petitioner was denied the right to effective
assistance of counsel when trial counsel waived his right
to the limited instructions concerning the state's use of
other crimes evidence.

Id.

Petitioner did not respond to this Court's notice pursuant to

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), indicating that he

wished for his petition to be ruled upon as filed.  In response to

this Court's order to answer, Respondents filed an answer, arguing

that Petitioner is not entitled to habeas relief.  (Docket Entry

No. 9.)  Petitioner did not file a reply.

## II. DISCUSSION

## A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent

part:

(a) The Supreme Court, a Justice thereof, a circuit
judge, or a district court shall entertain an application
for a writ of habeas corpus in behalf of a person in
custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties the United States." Id.  A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits.[2]  See 28

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Lewis v. Horn, 581 F.3d 92, 100 (3d Cir. 2009) (quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)).  "Section 2254(d) applies even where there has been

U.S.C. § 2254(d).  If a claim has been adjudicated on the merits
in state court proceedings, this Court "has no authority to issue
the writ of habeas corpus unless the [state court's] decision
'was contrary to, or involved an unreasonable application of,
clearly established Federal Law, as determined by the Supreme
Court of the United States,' or 'was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.'"  Parker v. Matthews, 132 S.Ct.
2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  However, when
"the state court has not reached the merits of a claim thereafter
presented to a federal habeas court, the deferential standards
provided by AEDPA ... do not apply."  Lewis, 581 F.3d at 100
(quoting Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by
determining the relevant law clearly established by the Supreme
Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).
Clearly established law "refers to the holdings, as opposed to
the dicta, of [the Supreme Court's] decisions as of the time of
the relevant state-court decision."  Williams v. Taylor, 529 U.S.
362, 412 (2000).  A court must look for "the governing legal

_____

a summary denial."  Cullen, 131 S.Ct. at 1402.  "In these
circumstances, [petitioner] can satisfy the 'unreasonable
application' prong of § 2254(d)(1) only by showing that 'there
was no reasonable basis' for the [state court's] decision."  Id.
(quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011)).

principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." Parker, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington, 131 S.Ct. at 785 (quoting Williams at 410). As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

Harrington, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S.Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. Id.

**B. Analysis**

**1. Evidentiary Issues (Grounds One and Four)**

Petitioner alleges that it was a violation of his constitutional rights when the trial court failed to grant a mistrial after one of the state's witnesses, while on the stand, called Petitioner a killer; blamed him for causing his wife's miscarriage; accused Petitioner's counsel of stealing $300 from him; and threw the microphone at Petitioner.

Petitioner raised this issue on direct appeal, which was denied by the Appellate Division.

On the first day of trial, the State called Sami Haq, father of Nadal Haq, to the stand. Approximately halfway

9

through Mr. Haq's testimony, defense counsel objected to a statement made by the witness.   Upon the court's sustaining the objection, the following incident took place:

> THE WITNESS: Listen to me man.   All right. God damn it.
>
> THE COURT: Sit down, sir.
>
> THE WITNESS: You mother fucker
>
> THE COURT: Ladies and Gentlemen ...
>
> THE WITNESS: You mother fucker. He's a killer this guy.  I don't want to sit down.
>
> SHERIFF'S OFFICER: Have a seat.
>
> THE COURT: Alright.
>
> THE WITNESS:... you ...
>
> THE COURT: Have the jury go in the juryroom.
>
> THE WITNESS: Just listen to me.  My wife was pregnant three months.  She got miscarriage. God damn it. And you know, mother fucker, you lawyer, I will show you outside last month you steal from me $300.00 for my son's case.  Now you come to a murderer.
>
>       (Jurors leave the courtroom)
>
> THE WITNESS  Listen, you to listen to me what I say.  God damn it.
>
>       (Defendant leaves the courtroom)
>
> THE WITNESS: I loose the baby, not one boy. My wife   pregnant three months.  The same two weeks she got  miscarriage in the hospital in St. Joseph's.  I have proof what this killer do to me.  He broke my life, my house and everything.

Mr. Haq continued his rant for a few more moments outside the presence of the jury before he finally calmed

himself, apologized to the court and then stepped outside
the courtroom.

After calm had been restored to the courtroom, defense
counsel moved for a mistrial, citing the statements made
by Mr. Haq during his outburst, especially in regards to
his wife's miscarriage, as having a prejudicial effect on
the jury that could not be overcome by any curative
instructions.  The trial judge declined to rule on the
motion at that time, but opted to conduct a voir dire of
the jury before ruling.

The judge then had the jury reenter the courtroom where
they were instructed as follows:

> All right.  Ladies and gentlemen of the jury,
> obviously I'm sure each and every one of you
> can understand that there are very tense and
> high emotions associated with this case, and
> indeed we suggested that to you from the
> outset.
>
> Mr. Haq obviously has a very close situation
> related to this trial.  His son is one of the
> victims in this case.  I'm sure you can
> understand to some degree, if not to a great
> degree, exactly the emotions that were going
> through him as he was called upon to testify
> in this case.  I am going to give you some
> [transcript cut off] regarding what happened
> in this courtroom.
>
> Mr. Haq made some statements which were not in
> response to any question posed to him by the
> Prosecutor.  I'm not sure how many of you
> heard all that he said.  I will deal with that
> further tomorrow.
>
> But I am instructing you now that in respect
> of anything that this witness has testified to
> or stated that was not in response to any
> question from the moment I sustained the
> objection on, is stricken from the record,
> which means that you may not consider it in
> any fashion at any time during the course of
> this trial or in your deliberations.

The next day, February 8, 2000, the trial judge conducted

11

a <u>voir</u> <u>dire</u> of the jury.  He questioned each member of
the panel individually with both counsel present.  The
<u>voir</u> <u>dire</u> revealed that each juror had heard the
outburst, but that few could put any substance to Mr.
Haq's ramblings.   Each juror testified that no
substantive discussion was engaged in by the jurors
pertaining to the incident.  Juror No. 10 stated that at
one point someone mentioned the outburst while they were
in the jury room, and that he responded with a comment on
baseball, which effectively quashed the discussion.  A
number of jurors recalled Mr. Haq yelling at defense
counsel, but none could recall the substance of what was
said to the defense attorney.  However, several jurors
heard Mr. Haq's remarks about his wife's miscarriage, but
only one told the Judge that he took it to mean Mr. Haq
blamed defendant for the miscarriage.  The miscarriage
was not mentioned in the juryroom by any of the jurors to
each other.

The jurors were polled and stated that they did not
believe the outburst would have a prejudicial effect on
their ability to assess the facts and render a
well-reasoned verdict.   The jurors also expressed
confidence in their ability to remain loyal to their
oath.  The jurors did not speak about the outburst with
each other and stated that they knew they had to decide
the case on the facts and not on emotion and that the
outburst had to be disregarded.

Upon completion of the <u>voir</u> <u>dire</u>, the judge was satisfied
that no "manifest injustice" would result from the
continuation of the trial, and that a curative statement
would suffice to ensure that the jury would disregard the
outburst in their consideration of the case.

The standard for granting a mistrial is "whether or not
the error is such that manifest injustice would result
from continuance of the trial and submission of the case
to the jury."  Pressler, <u>Current N.J. Court Rules</u>,
comment 3 on <u>R.</u> 3:20-1(2002); <u>see</u>, <u>e.g.</u>, <u>State v.
LaPorte</u>, 62 <u>N.J.</u> 312, 318-19 (1973); <u>State v. Hubbard</u>,
123 <u>N.J. Super.</u> 345, 351 (App. Div.), <u>certif. denied</u>, 63
<u>N.J.</u> 325 (1973). Additionally, in considering a motion
for a mistrial the trial court must determine if the
prejudice that results from the error can be cured by an
appropriate instruction.  <u>See</u>, <u>e.g.</u>, <u>State v. Winter</u>, 96
N.J. 640, 646-58 (1984).  We must defer to the trial
court's determination not to grant a mistrial unless it

is clear from the record that manifest injustice would result since it "is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting." State v. Hogan, 297 N.J. Super. 7, 15 (App. Div.), certif. denied, 149 N.J. 142 (1997). See also, State v. LaBrutto, 114 N.J. 187, 207 (1989).

A review of the record shows that no such manifest injustice occurred as a result of the decision not to grant defendant's motion for a mistrial. We are satisfied, as was the trial judge, that the jurors were acutely aware that the witness's emotional comments could not be considered in their deliberations. Most importantly, the jurors expressed their belief that they could be faithful to their oath, and that they could impartially decide the case on its facts.

The trial judge took great care in determining whether or not to grant a mistrial. He conducted an extensive voir dire of the jury, all the while being mindful not to ask questions which would further enlighten it to the substance of Mr. Haq's outburst. He carefully considered all the jurors remarks, comments, and concerns.

The judge also gave several curative instructions, first immediately following Mr. Haq's outburst, then again before the voir dire, and, finally, an extensive instruction when the court determined that a mistrial was not necessary.

Defendant argues that the nature of the outburst was ground for a mistrial, contending that the fact that Mr. Haq was on the witness stand created a prejudicial impression with the jury of a grieving father. We reject this argument.

First, most, if not all, murder trials have a "human face." At some point, a jury is likely to be faced with a witness who has suffered a devastating loss as a result of the homicide. Had Mr. Haq never delivered his unfortunate outburst, the jury still would have seen a grieving father. Such a scenario cannot necessitate a mistrial in every case.

Second, it is well settled that witness outbursts are not, per se, grounds for a mistrial; a trial judge can

13

cure an unexpected witness outburst by giving a curative
instruction to the jury. See, e.g., State v. Harris, 156
N.J. 122. 175-76 (1998), cert. denied, 121 S. Ct. 2204
(2001); State v. Lozada, 257 N.J. Super. 260, 276-77
(App. Div.), certif. denied, 130 N.J. 595 (1992).

In a case involving similar emotional fervor, the
Delaware Supreme Court held that a witness outburst on
the stand was not so prejudicial as to require a
mistrial. Taylor v. State, 690 A.2d 933 (Del. 1997).
That case involved a criminal trial of an accused child
molester. The mother of one of the victims testified for
the state. During her testimony, she broke down into
uncontrollable sobbing and accused defendant of abusing
her child. The trial court gave a curative instruction
to the jury but denied a motion for a mistrial. The
Delaware Supreme Court held that a mistrial was not
warranted because "the jury would understand the
witness's emotional involvement in a case involving her
young relatives and that the isolated outburst would not
interfere with the impartiality of the jury's
fact-finding process." Ibid. at 935. We are satisfied
that the trial judge's prompt and effective instructions,
in light of the responses of the jurors during the voir
dire, prevented any prejudice to defendant that would
have justified a mistrial.

State v. Gentile, No. A-0846-00T4 (N.J. Super. Ct. App. Div.

Oct. 10, 2002).

In his fourth ground for relief, Petitioner argues he was

denied the right to a fair trial and due process when the trial

court allowed the state to introduce inadmissible other crimes

evidence. Petitioner raised this claim in his PCR petition and

it was denied by the PCR court. The Appellate Division affirmed

that denial.

During the PCR proceeding that is the subject of this
appeal, defendant argued that the evidence of his firing
a handgun in Connecticut two weeks earlier was highly
prejudicial and should have been excluded. He asserted

14

that the failure of appellate counsel to have raised this issue on direct appeal constituted ineffective assistance of counsel. He also argued that the evidence of the Connecticut incident was erroneously admitted at trial and trial counsel was ineffective for waiving a limiting instruction. After a hearing, Judge DeLuccia denied the petition.

We quote Jorge Concepcion's testimony on behalf of the State about the Connecticut incident in order to provide context for our analysis. Concepcion testified:

> Q: I take your attention specifically to March 17, 1997. At one point that day did you and [defendant] go to a location in the City of New Britain, Connecticut, specifically 22 Horseplane Road? Did you and [defendant] go into that address?
>
> A: Yes.
>
> Q: And before you and [defendant] went in that address, do you know if he had a gun in his possession?
>
> A: Yes.
>
> Q: How do you know he had a gun?
>
> A: Because he took it out.
>
> Q: Did you see it?
>
> A: Yes.
>
> Q: What type of gun did it appear to be to you?
>
> A: 380.
>
> Q: 380 what? What's a 380 mean?
>
> A: 380?
>
> Q: 380?
>
> A: Yeah. Automatic.
>
> Q: Automatic?

15

A: Yes.

Q: When you and [defendant] were at that location, did you hear the discharge go off?

A: Yes.

Q: You didn't actually see the gun go off, correct?

A: No.

Q: Did you and [defendant] leave together eventually?

A: Yes.

Q: And did you discuss with him the fact that you heard the gun go off?

A: Not right away.

Q: When did you guys talk about that?

A: The next day.

Q: And did he explain to you that he had shot the gun?

A: Yes.

....

Q: And eventually you discussed what you knew about the discharge of the gun with the Connecticut police on October 5, 1998, am I correct? Does that sound about right?

A: Yes.

Prior to permitting Concepcion to testify, the trial court held a 104(a) hearing to determine whether the testimony should be admitted, and if so, the extent to which it should be sanitized. During the Rule 104(a) hearing, the State presented evidence that when defendant fired the gun, he did so at a Chinese restaurant during a robbery, killing a restaurant employee. At the time Concepcion testified here as a State's witness,

Concepcion and defendant faced felony murder charges in Connecticut as a result of the shooting there. Before Concepcion testified, Judge DeLuccia ordered that the testimony be sanitized. There was no mention of the premises being a restaurant. Instead, it was referred to merely as a "structure." Additionally, Concepcion did not mention the murder of the employee.

When Judge DeLuccia granted the State's motion to introduce evidence of the Connecticut incident, the judge concluded that the evidence of defendant possessing and firing a weapon in Connecticut satisfied the four-part test established by <u>State v. Cofield</u>, 127 N.J. 328, 338 (1992). The judge also stated that the evidence was "not classic 404(b) evidence." He explained that the State was not attempting to establish that there was any plan, scheme, motive or any other exception to the N.J.R.E. 404(b) prohibition on admitting evidence of prior bad acts. Instead, the judge concluded that the evidence in question was "purely impeachment testimony."

In particular, defendant gave a statement to police in April 1997, days after the Paterson shootings. In that statement, defendant insisted that he had not brought a handgun to the scene. Instead, defendant stated that when some "Arabic kids" threatened him, he grabbed a gun from the wheel well of a parked car, and fired the gun in order to defend himself. Defendant claimed that co-defendant Louis Muniz had placed the gun in the wheel well.

During the Rule 104(a) hearing, the State argued that evidence of defendant firing a gun in Connecticut should be admitted to establish that defendant lied when he claimed that he had not brought the gun to the scene of the Paterson shooting. Through ballistics testing, the State had established that the gun used to kill Haq and Atsham was the same gun that defendant possessed and fired in Connecticut thirteen days earlier. After considering defendant's objection, the judge held that the evidence of defendant having fired a gun in Connecticut was admissible to attack defendant's credibility and to challenge the veracity of his claim that he had not brought a gun to the scene. The judge reasoned that the jury should be entitled to consider defendant's credibility when it evaluated the truthfulness of the self-defense claim he made in his April 1997 statement to police.

During the Rule 104(a) hearing, the judge asked defense counsel if defendant wanted the judge to provide a limiting instruction concerning the use of the Connecticut evidence. Defense counsel told the judge defendant did not want a limiting instruction. On direct appeal, defendant made no claims of error concerning the admission of evidence of the Connecticut incident.

...

Defendant argues before us that the trial court erred when it denied his petition for post-conviction relief. Specifically, he maintains that the evidence regarding his possession of the handgun in Connecticut was improperly admitted during the trial, and deprived him of a fair trial. He asserts that the Connecticut evidence improperly suggested that he had a "proclivity to commit a violent crime," and that it was cumulative because "many witnesses established defendant as the shooter."

In reply, the State argues, and we agree, that defendant is procedurally barred from raising this issue in his PCR petition....

Despite our conclusion that defendant is procedurally barred from challenging the disputed evidence during the PCR proceeding, we nonetheless exercise our discretion to consider the claim substantively in order to provide complete appellate review. We agree with the State that the disputed evidence was properly admitted pursuant to the criteria established first in Cofield, supra, 127 N.J. at 338, and re-affirmed recently in State v. Lykes, --- N.J. ---- (2007)(slip op. at 22-25). Evidence of a prior bad act is only admissible when it is relevant to a material issue; similar in kind and reasonably close in time to the offense charged; and clear and convincing. Finally, its probative value must not be outweighed by its apparent prejudice. Cofield, supra, 127 N.J. at 338; Lykes, supra, --- N.J. ---- (slip op. at 22). The evidence of defendant firing a weapon in Connecticut met this four-part Cofield/Lykes test. Moreover, the evidence was sufficiently sanitized to eliminate any undue prejudice to defendant. There was no reference to the murder, nor were the premises identified as a restaurant.

While it is true that defendant's identity as the shooter was not disputed during the trial, defendant argued that he shot the victims in self-defense. Defendant did not

18

testify, and presented no witnesses. Accordingly, his claim of self-defense depended upon the jury accepting as truthful his statement to police in April 1997 that he acted in self-defense. Once defendant claimed that he acted in self-defense, the State bore the burden of disproving that defense beyond a reasonable doubt. State v. Joseph, 174 N.J. 44, 102 (2002). We agree with Judge DeLuccia's conclusion that the State was entitled to attack defendant's credibility by presenting evidence that he lied when he claimed to police that the gun he used to shoot the victims was not his, but belonged to Muniz. We also agree with the judge's conclusion that consequently the admission of evidence of the Connecticut incident was not error.

State v. Gentile, 2007 WL 4270757 (N.J. Super. Ct. App. Div. December 07, 2007).

Federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir.2004) (citing Estelle). Because it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," this court's inquiry is "limited to deciding whether [petitioner's] conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Wells v. Pestock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is

intended as a guide to implement a federal constitutional guarantee.").

Applying these principles to the facts of the instant case, a review of the New Jersey Appellate Division's decisions shows that the state courts found no errors had been committed in the rulings at issue under state law.  Given this determination, a federal habeas court may only consider whether the ruling was so prejudicial as to violate due process and the right to a fair trial.  See Donnelly v. DeChristoforo, 416 U .S. 637, 643 (1974) (generalized arguments of denial of due process as opposed to specific guarantees under the Bill of Rights were advanced; relief can be granted only if the trial is so infected with unfairness as to make the conviction a denial of due process).

Petitioner has failed to make the necessary showing, as review of the record fails to support his claims.  It is clear that the state court extensively voir dired the jury and provided curative instructions several times to ensure that the jury would not consider the outburst in their deliberations.  This Court does not sit to review state law evidentiary decisions in a habeas corpus action and moreover, "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect

20

of the evidence would be 'devastating' to the defendant." Greer
v. Miller, 483 U.S. 756, 766 n. 8 (1987)(citations and internal
quotation marks omitted).  Further, the state courts extensively
review the other crimes evidence and after sanitization, properly
allowed it to be admitted to challenge Petitioner's credibility.
Since the state courts' adjudication of the claims were not
contrary to, or an unreasonable application of, Supreme Court
precedent, habeas relief is denied.

## 2.  Jury Instructions

In his second ground for relief, Petitioner argues that he
was denied a fair trial and due process of law when the trial
court denied his request to instruct the jury on
passion/provocation and/or imperfect self-defense.

Petitioner raised this issue on direct appeal.  The
Appellate Division denied his claim.

> The second issue defendant raises on appeal is that the
> trial court erred in failing to instruct the jury on the
> passion/provocation manslaughter defense to the murder of
> Nadal Haq and the attempted murder of Ali.
>
> When a defendant requests a passion/provocation
> manslaughter charge, the trial court must examine the
> record to determine if a "rational basis" exists for the
> instruction.  See N.J.S.A. 2C:1- 8e; State v. Crisantos,
> 102 N.J. 265, 273 (1986); State v. Pridgen, 245 N.J.
> Super. 239, 250 (App. Div. 1991), certif. denied, 126
> N.J. 327 (1991).  The trial court is not obligated to
> instruct the jury on the theories that are not warranted
> by the record.  See Crisantos, supra, 102 N.J. at 273.
>
> The defense of passion/provocation manslaughter has four
> elements: 1) the provocation must be adequate to inflame
> a reasonable person; 2) there must not be a cooling off

period between the provocation and the slaying; 3) the
provocation must have "actually impassioned" the slayer;
and 4) the defendant must not have actually cooled off
before the slaying. State v. Mauricio, 117 N.J. 402, 411
(1990).

The first two prongs of the test are used by the trial
court as an objective guide to determine if a "rational
basis" for the charge exists. Ibid. at 413. The trial
court must determine whether the provocation is
sufficient to arouse the passions of an ordinary person
in similar circumstances beyond the power of his control.
See State v. Oglesby, 112 N.J. 522, 536 (1991).

There is nothing in this record to support defendant's
contention that a normal, reasonable person would have
acted the way he did if that person were in defendant's
shoes. The record shows that defendant, Muniz, Haq, and
Atsham were merely exchanging words when defendant opened
fire. Defendant stated to police that he "saw that one
of the tall kids had a gun...." However, he did not
identify the person by name, and there is nothing in the
record to suggest that defendant believed either Haq or
Atsham were armed. In fact, Ali testified before the
Grand Jury that at the time of the shooting, neither he,
Atsham, Haq, nor any other of his friends were armed.

Further, nothing in the record suggests that either Haq
or Atsham threatened or struck defendant or Muniz. But
even if Haq or Atsham had threatened defendant, that
threat alone would not have been enough to justify a
passion/provocation manslaughter charge. It is settled
law that words and insults alone do not provide adequate
provocation. See State v. Crisantos, supra, 102 N.J. at
274; State v. King, 37 N.J. 285, 301-02 (1962). In order
to "provoke," a threat must be accompanied by an overt
action, such as brandishing a weapon. See State v.
Mauricio, supra, 117 N.J. at 414.

Since the record does not provide a rational basis for
the first element of the passion/provocation manslaughter
defense, the trial judge was correct in denying the
requested instruction.

Defendant's third issue is that the trial court erred in
failing, sua sponte, to instruct the jury on imperfect
self-defense. This issue was not raised in the court
below; therefore, defendant is barred from raising it

22

here. Pressler, Current N.J. Court Rules, comment 2 on R. 1:7-2(2002).  When the trial judge informed both counsel that he planned to charge the jury with "self-defense," defense counsel did not then mention the possibility of an "imperfect self-defense" charge. After the judge told counsel what charges he intended to give, he asked counsel if there was anything else to consider.  Again, defense counsel did not object, nor did he interject the imperfect self-defense charge.

Of course, 1:7-2 provides an exception to the proscription against review of a jury charge not objected to, if the failure to charge amounts to "plain error." In considering whether an error in a jury charge rises to the level of "plain error," the test is whether any "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant is sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969), cert. denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L. Ed. 2d 797 (1970).

The theory of imperfect self-defense accords a defendant a lesser charge of homicide if he honestly, but unreasonably believes he must use deadly force to protect himself.  We do not recognize such a defense.  See State v. Williams, 168 N.J. 323, 334 (2001); State v. Branch, 155 N.J. 317, 329 (1998); State v. Bowens, 108 N.J. 622, 630-31 (1987).  However, it has been held that evidence of imperfect self-defense may act to negate the State's evidence that a person acted purposely or knowingly. State v. Bowens, supra, 108 N.J. at 629-32.  Thus, while not a defense in and of itself, it may be used to defeat the requisite mens rea.  It is not error for the trial court to withhold an imperfect self-defense charge, as long as the jury is given the opportunity to assess whether the requisite mens rea was proven beyond a reasonable doubt.  Id. at 636.  In this case, the jury charges on aggravated and reckless manslaughter, as lesser offenses of murder, allowed the jury to make that assessment.  Id. at 637.

Because the jury was afforded the opportunity to gauge defendant's mental state, the imperfect-self defense charge was unnecessary, and its omission was not error, much less plain error.

<u>State v. Gentile</u>, No. A-0846-00T4 (N.J. Super. Ct. App. Div. Oct. 10, 2002).

Generally, questions relating to jury instructions are matters of state law not cognizable in federal habeas review. <u>See</u> <u>Engle v. Isaad</u>, 456 U.S. 107 (1982); <u>Henderson v. Kibbe</u>, 431 U.S. 145 (1977). Thus, even a jury instruction that is inconsistent with state law does not necessarily merit federal habeas relief.

Where a federal habeas petitioner seeks relief based upon the jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

<u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73 (1991) (citations omitted).

The Due Process Clause is violated where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." <u>Smith</u>

v. Horn, 120 F.3d 400, 416 (1997). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Here, the state courts found that the evidence did not support an instruction on passion/provocation or imperfect self-defense.  That decision was neither contrary to nor an unreasonable application of Supreme Court precedent.  Accordingly, Petitioner is not entitled to relief on this claim.

**3.  Sentence**

In his third ground for relief, Petitioner argues that his right to be free from cruel and unusual punishment was violated when the state court imposed a life term for murder and consecutive sentences for aggravated manslaughter, contrary to New Jersey's sentencing criteria.

Petitioner raised this claim on direct appeal, which was denied by the Appellate Division.

> Defendant contends that the trial court abused its discretion in imposing a life sentence for murder because it did not qualitatively weigh the aggravating and mitigating factors.
>
> Under the Criminal Code, the "unfettered sentencing

25

discretion" of pre-code law has been replaced with "a
structured discretion designed to foster less arbitrary
and more equal sentences." State v. Roth, 95 N.J. 334,
335 (1984).  Therefore, we must insure that the trial
judge followed the sentencing guidelines in the Code. We
must 1) "require that an exercise of discretion be based
on findings that are grounded in competent, reasonably
credible evidence"; 2) "require that the fact-finder
apply correct legal principles in exercising its
discretion"; and 3)  "modify sentences only when the
facts and the law show such a clear error of judgment
that it shocks the judicial conscience." Id. at 363-64.
In this case, the decision to sentence defendant to life
imprisonment was "grounded in competent, reasonably
credible evidence."  The record demonstrated that
defendant fired two shots "execution style" into the back
of Nadal Haq's head. Haq did not instigate the fight, nor
did he engage defendant when defendant pulled his gun.
Haq was unarmed and was attempting to hide from defendant
when defendant shot him.

Defendant argues that he should be spared life
imprisonment because he had no prior adult convictions
and because he was so young.  Yet, his victim, Nadal Haq
was only sixteen years old, and his young life was ended
by defendant's senseless and brutal act.  Defendant also
argues that the trial court should have considered
provocation as a mitigating factor.  However, based on
our conclusion that there was no rational basis for a
finding of provocation, the judge was entitled to
conclude that it was not a legitimate mitigating factor.

Defendant also relies on State v. Christensen, 270 N.J.
Super. 650, 657 (App. Div. 1994) in arguing that
defendant's behavior was precipitated by his belief that
he was going to be harmed. However, there is no credible
evidence in the record to suggest that defendant feared
for his life.  Christensen involved an assault conviction
where defendant believed he was coming to the aid of
someone who was being attacked.  That case is readily
distinguishable from the present one where defendant
maliciously murdered his victim

.

In any event, the trial court is not required to assess
mitigating factors. See, e.g., State v. Setzer, 268 N.J.
Super. 553, 567-578 (App. Div. 1993), certif. denied, 135
N.J. 468 (1994). While, "consideration of aggravating
factors by the trial court [is] mandatory...,

consideration    of    mitigating    factors    remains
discretionary."    Cannel, <u>New Jersey Criminal Code
Annotated</u>, comment 5 to <u>N.J.S.A.</u> 2C:44-1(2001).   The
judge was justified in rejecting the mitigating factors
suggested by defendant.

We may only modify the sentence if there is such a "clear
error of judgment that it shocks the judicial concience."
[sic] <u>State v. Roth</u>, <u>supra</u>, 95 <u>N.J.</u> at 364.   A life
sentence for the murder of a sixteen-year-old boy who was
hiding in fear for his life does not shock our judicial
conscience.

Defendant argues that the trial court erred in imposing
consecutive   sentences   for   defendant's   murder   and
aggravated manslaughter convictions, contrary to <u>State v.
Yarbough</u>, 100 <u>N.J.</u> 627 (1985), <u>cert. denied</u>,   475 U.S.
1014, 106 S.Ct. 1193, 89 L.Ed. 2d 308 (1986).

The Supreme Court laid out criteria in <u>Yarbough</u> to assist
trial courts in its imposition of consecutive sentences.
Trial courts are to focus on "five facts relating to the
crimes":

>     1) whether the crimes are their objectives
>     were predominately independent of each other;
>
>     2)whether the crimes involved separate acts of
>     violence or threats of violence;
>
>     3)whether   the   crimes   were   committed   at
>     different times or separate places, rather
>     than being committed so closely in time and
>     place   as   to   indicate   a   single   period   of
>     aberrant behavior;
>
>     4)whether any of the crimes involved multiple
>     victims;
>
>     5)whether   the   convictions   for   which   the
>     sentences were to be imposed are numerous.
>
>     <u>State v. Molina</u>, 168 <u>N.J.</u> 436, 441-42 (2001)
>     (citing <u>State v. Yarbough</u>, <u>supra</u>, 100 <u>N.J.</u> at
>     644.)

The judge reasonably determined that most of the five
factors listed above were present in this case.   The

27

murders of Hag and Atsham occurred at two separate locations and at two separate times, with ample time in between for defendant to cool down, hide, turn himself in or run.  The crimes involved two separate acts of violence and multiple victims.

It is established that there are no free crimes in our system of justice.  See State v. Carey, 168 N.J. 413, 422 (2001).  Defendant Gino Gentile shot and killed two young men and severely wounded a third.  The judge did not abuse his discretion in imposing consecutive sentences.

State v. Gentile, No. A-0846-00T4 (N.J. Super. Ct. App. Div. Oct. 10, 2002).

As stated above, the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle, 502 U.S. at 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"  (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))); see 28 U.S.C. § 2254(a) ("district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").  Petitioner alleges only that the state court failed to properly consider any mitigating factors in sentencing.  Accordingly, based on the supporting facts Petitioner alleges for this ground, which relate only to alleged violations of state law, Petitioner is not entitled to federal habeas relief.

## 4. Ineffective Assistance of Counsel

In his final ground for relief, Petitioner argues that he was denied the right to effective assistance of counsel when trial counsel waived his right to the limiting instructions concerning the state's use of other crimes evidence.

Petitioner raised this issue in his PCR petition. In its first review of the issue, the Appellate Division found that the PCR court should have conducted a hearing and as such, remanded the petition back to the PCR court.

> We turn next to defendant's claims concerning trial counsel. Although trial counsel objected to the State's request to admit the Connecticut evidence, he refused the judge's offer of a limiting instruction. Cofield requires a limiting instruction to be given whenever N.J.R.E. 404(b) evidence is introduced. Cofield, supra, 127 N.J. at 340-41

> Although the evidence in question was introduced for purposes of impeachment rather than for a "classic" 404(b) purpose, such as motive, absence of accident, or intent, it nonetheless satisfied the Cofield definition of prior wrongdoing, Id. at 335-36, thus necessitating a limiting instruction. Id. at 340-41. We reach this conclusion even though there was no direct evidence that defendant possessed the gun illegally, or that by firing a gun defendant had committed a crime. Because Concepcion testified that he spoke with police about the Connecticut incident, the jury could have assumed that defendant acted unlawfully when he fired the gun in Connecticut. A limiting instruction would have eliminated the risk that the jury might have impermissibly viewed the Connecticut evidence as proof of defendant's proclivity to engage in violent behavior.

> During the PCR hearing, the trial judge did not address defendant's contention that trial counsel's waiver of a limiting instruction constituted ineffective assistance of counsel. Because Cofield requires a limiting instruction, we conclude that counsel's waiver entitles

defendant to an evidentiary hearing, at which time
counsel should explain his reasons for the waiver. See
State v. Preciose, 129 N.J. 451 (1992). Counsel might
have waived the limiting instruction because he was
loathe to draw attention to the testimony, but we decline
to speculate. We believe the better practice is to remand
to the trial court for a hearing at which counsel should
explain his reasons. The hearing on remand shall be
limited to that issue. We accordingly reverse the portion
of the January 31, 2006 order that rejected defendant's
claims as to trial counsel.

State v. Gentile, 2007 WL 4270757 (N.J. Super. Ct. App. Div.

December 07, 2007).

On remand, the PCR court conducted an evidentiary hearing

and again found that Petitioner was not entitled to relief on

this ground.  Petitioner appealed and the Appellate Division

affirmed that ruling, stating the following:

Judge De Luccia conducted the evidentiary hearing on
January 22, 2009. Defendant's trial counsel testified, as
did defendant. Trial counsel testified that he discussed
with defendant the advisability of requesting a limiting
instruction, and they jointly made a decision not to do
so because it would have the potential to highlight
defendant's use of a gun in the Connecticut incident.
Counsel explained that this was a carefully considered
strategic decision, and, had defendant not agreed with
the decision, counsel would have not overridden his
client's position but would have requested a limiting
instruction. Defendant denied having that discussion or
agreeing with that decision.

Judge De Luccia made extensive credibility findings. He
found trial counsel's testimony credible and defendant's
incredible. The judge further found that the trial
strategy fell within the very wide range of discretion
afforded trial attorneys in making strategic decisions,
and was therefore not deficient conduct. Finally, the
judge concluded that even if a limiting instruction had
been requested and given, the outcome of the trial would
not have been different in light of the overwhelming

evidence of defendant's guilt. The judge therefore denied defendant's PCR petition.

Defendant argues:


DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL'S WAIVING A LIMITING INSTRUCTION AS TO N.J.R.E. 404(b) EVIDENCE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

We reject defendant's argument. Judge De Luccia's factual findings, including his credibility determinations, are based upon sufficient credible evidence in the record, and we defer to them. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). Further, we find no error in the judge's analysis and conclusion regarding the substance of the strategic decision that was made.

Entitlement to post-conviction relief requires satisfaction of the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984), which was adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Under this test, the court first looks at whether counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L. Ed.2d at 693. Then, under the second prong, the issue is whether there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L. Ed.2d at 698. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." Ibid.

"The first prong is satisfied by a showing that counsel's acts or omissions fell 'outside the wide range of professionally competent assistance' considered in light of all the circumstances of the case." State v. Chew, 179 N.J. 186, 203, 844 A.2d 487 (2004) (quoting Strickland, supra, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L. Ed.2d at 695). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a

criminal defendant." <u>Strickland</u>, <u>supra</u>, 466 U.S. at 688-89, 104 S.Ct. at 2065, 80 L. Ed.2d at 694. Consequently, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S.Ct. at 2065, 80 L. Ed.2d at 694. In order to rebut this presumption, a defendant must prove that counsel's actions did not amount to "sound trial strategy." <u>Id.</u> at 689, 104 S.Ct. at 2065, 80 L. Ed.2d at 694-95. Courts should "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of the counsel's conduct." <u>Id.</u> at 690, 104 S.Ct. at 2066, 80 L. Ed.2d at 695.

Applying these principles, we concur with Judge De Luccia that defendant has failed to establish that waiver of a limiting instruction did not constitute sound trial strategy or that a limiting instruction would have created a reasonable probability that the outcome of defendant's trial would have been different.

<u>State v. Gentile</u>, 2011 WL 677281 (N.J. Super. Ct. App. Div. February 25, 2011).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See <u>Strickland</u>, 466 U.S. at 687.

32

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011)(citing Strickland, 466 U.S. at 690, 104 S.Ct. 2052). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" Id. (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding'...Counsel's errors must be 'so serious as to deprive the defendant of a fair

33

trial, a trial whose result is reliable.'" Harrington v. Richter,
131 S.Ct. 770, 788 (2011)(citing Strickland, 466 U.S. at 687, 104
S.Ct. 2052).  As the Supreme Court explained,

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and
> factual findings that were affected will have been
> affected in different ways. Some errors will have had a
> pervasive effect on the inferences to be drawn from the
> evidence, altering the entire evidentiary picture, and
> some will have had an isolated, trivial effect. Moreover,
> a verdict or conclusion only weakly supported by the
> record is more likely to have been affected by errors
> than one with overwhelming record support. Taking the
> unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a
> court making the prejudice inquiry must ask if the
> defendant has met the burden of showing that the decision
> reached would reasonably likely have been different
> absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address
both components of an ineffective assistance claim "if the
defendant makes an insufficient showing on one."  Strickland, 466
U.S. at 697.  "If it is easier to dispose of an ineffectiveness
claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed."  Id.

The foregoing shows that the New Jersey courts reasonably
applied the Supreme Court's holding in Strickland and its
progeny.  Petitioner has demonstrated neither that counsel's
performance was deficient, nor that the results of the trial
would have been different had the attorney acted as Petitioner

now suggests.  The state court conducted a thorough hearing and found that it was a valid strategic decision on the part of trial counsel not to seek a limiting instruction.  Petitioner has not provided any evidence to show that the state courts' decision was contrary to, or an unreasonable application of <u>Strickland</u> and other Supreme Court holdings.  As such, this claim will be denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied,

and a certificate of appealability will not issue.  An

appropriate Order follows.


                              ___s/ Stanley R. Chesler___
                              STANLEY R. CHESLER
                              United States District Judge


DATED: January 7, 2013